[Cite as *New 52 Project, Inc. v. Proctor*, 122 Ohio St.3d 1, 2009-Ohio-1766.]

NEW 52 PROJECT, INC., APPELLEE, *v*. PROCTOR, DIR., OHIO DEPARTMENT OF
TRANSPORTATION, APPELLANT.

[Cite as *New 52 Project, Inc. v. Proctor*, 122 Ohio St.3d 1, 2009-Ohio-1766.]

*Abandonment of state highway — R.C. Chapter 5511 gives the director of
transportation the exclusive authority to abandon or vacate portions of the
state highway system. A court of common pleas has no jurisdiction to
decide whether an easement for a state highway has been abandoned.*

(No. 2008-0574 — Submitted February 4, 2009 — Decided April 21, 2009.)

APPEAL from the Court of Appeals for Franklin County,

No. 07AP-487, 2008-Ohio-465.

————————————

**SYLLABUS OF THE COURT**

R.C. Chapter 5511 gives the director of transportation the exclusive authority to
abandon or vacate portions of the state highway system. Therefore, a
court of common pleas has no jurisdiction to decide whether an easement
for a state highway has been abandoned.

————————————

**LUNDBERG STRATTON, J.**

{¶ 1} Today we must decide whether a court of common pleas has
jurisdiction to decide whether an easement for a state highway has been
abandoned. Because we hold that R.C. Chapter 5511 gives the director of
transportation the exclusive authority to abandon or vacate portions of the state
highway system, we answer that question in the negative. Accordingly we
reverse the judgment of the court of appeals and reinstate the judgment of the trial
court dismissing the complaint.

**Facts and Procedural History**

{¶ 2} In 1959, Lillian Parsons deeded an easement through a portion of her property, in the village of Chesapeake, to the state of Ohio. By conveyance from Parsons's successors in interest, New 52 Project, Inc. ("New 52"), appellee, became owner of the underlying fee. The deed stated that the grantor, "for and in consideration of the sum of * * * $38,840.64 and for other good and valuable consideration to her paid by the State of Ohio, the Grantee, * * * does hereby grant, bargain, sell, convey and release to the said Grantee, its successors and assigns forever, a perpetual easement and right of way for public highway and road purposes in, upon and over the lands hereinafter described, including loss of direct access as hereinafter provided."

{¶ 3} The easement was used for highway purposes for some years as the main route of U.S. 52 for ingress to and egress from Chesapeake, Ohio. Beginning in 1984 or 1985, the highway was rerouted; the previous highway became an exit ramp and was rerouted so that it did not traverse the easement at issue.

{¶ 4} In 2006, New 52 sued the director of transportation in the Franklin County Court of Common Pleas, seeking a declaration that the Ohio Department of Transportation ("ODOT") had abandoned this easement or that the easement was extinguished by operation of law. The director moved to dismiss the complaint, arguing that the complaint failed to state a claim upon which relief could be granted. The trial court dismissed the complaint, holding that New 52 had no common-law cause of action because R.C. 5511.01 set forth the exclusive procedures for abandoning a highway and any action for an abandonment of the easement must be accomplished through the guidelines set forth in the statute.

{¶ 5} The Tenth District Court of Appeals reversed, holding that R.C. 5511.01 provided one means, but not the exclusive means, to abandon a highway. *New 52 Project, Inc. v. Proctor,* Franklin App. No. 07AP-487, 2008-Ohio-465, ¶ 23. The court decided that New 52's complaint sufficiently pleaded facts stating a

claim for relief and reversed and remanded the case for further proceedings. The director appealed, and this court accepted jurisdiction. *New 52 Project, Inc. v. Proctor*, 118 Ohio St.3d 1505, 2008-Ohio-3369, 889 N.E.2d 1024.

**Analysis**

**{¶ 6}** Pursuant to R.C. 5501.31, the director of transportation has "general supervision of all roads comprising the state highway system." As part of that general supervision, R.C. 5511.01 and 5511.07 establish a process for the director to abandon or vacate highway property interests.

**{¶ 7}** The abandonment of a state highway is governed by R.C. 5511.01, which provides that the director of transportation "may, upon giving appropriate notice and offering the opportunity for public involvement and comment, abandon a highway on the state highway system or part of such a highway which the director determines is of minor importance or which traverses territory adequately served by another state highway, and the abandoned highway shall revert to a county or township road or municipal street."

**{¶ 8}** R.C. 5511.07 establishes the procedure for vacating a highway or portion of a highway and provides that the director, "in vacating any highway or portion thereof on the state highway system that the director finds is no longer necessary for the purposes of a public highway, shall issue such a finding, which shall contain a description of the highway or part thereof to be vacated. Notice of such finding shall be published once a week, for two consecutive weeks, in a newspaper of general circulation in the county in which the highway, or part thereof, to be vacated lies, and a copy of the notice shall be served as in civil cases, or by registered first class mail, return receipt requested, upon each owner of property abutting on the portion of the highway to be vacated, and upon the director of natural resources. * * * The director shall make any vacation of a highway or portion of a highway to an abutting landowner or current underlying fee owner of record at no cost."

**{¶ 9}** In spite of the statutory process, New 52 filed a common-law action seeking a declaration that ODOT had abandoned the easement or that the easement had been extinguished, and that New 52 was the sole owner of the real property, free from the easement. In reversing the trial court's grant of the director's motion to dismiss for failure to state a claim upon which relief could be granted, the court of appeals concluded that R.C. 5511.01 provided one means to abandon a highway, but it did not agree that the mechanism was exclusive. Holding that the statute "neither expressly repeals nor incorporates any aspect of the common law cause of action for abandonment of a highway easement," the court held that a common-law claim for abandonment of the easement remained available to the fee owner. *New 52 Project, Inc.*, 2008-Ohio-465, ¶ 23.

**{¶ 10}** The court of appeals relied upon *Kelly Nail & Iron Co. v. Lawrence Furnace Co.* (1889), 46 Ohio St. 544, 22 N.E. 639, in which this court considered a claim of abandonment of a road in a municipal corporation that was at times in bad condition and impassable, and had not been used for 11 years. This court held that the facts did not sufficiently show abandonment. Although this court did hold that "[i]f non-user [sic] of such road may work an abandonment of it, the non-user [sic] must be shown to have extended over a period of twenty-one years," id. at paragraph two of the syllabus, the court also noted that "no good reason exists why the statutory remedy may not be resorted to in all cases where there has not been a clear non-user [sic] of the street by the public for the period of twenty-one years." Id. at 549.

**{¶ 11}** It would appear that in *Kelly Nail* the court left open the possibility of a common-law action for abandonment of the easement. However, six years later, this court held that an individual could not adversely possess a public road established by a county. *Heddleston v. Hendricks* (1895), 52 Ohio St. 460, 40 N.E. 408. In 2002, this court reaffirmed *Kelly Nail* in *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 68, 765 N.E.2d 345. However, *Shemo*

involved city streets rather than the state highway system, so it is inapplicable here.

{¶ 12} In *Houck v. Bd. of Park Commrs. of the Huron Cty. Park Dist.,* 116 Ohio St.3d 148, 2007-Ohio-5586, 876 N.E.2d 1210, in holding that a park district was not subject to adverse possession, this court held that "adverse possession of park property deprives the public of the enjoyment of park property and imposes a burdensome obligation on park districts to monitor their property." Id. at ¶ 29. If one cannot adversely possess public property, then clearly an action for common-law abandonment of an easement due to nonuse of a public highway cannot be permitted.

{¶ 13} Not only will adverse possession not lie against the state, *Haynes v. Jones* (1915), 91 Ohio St. 197, 110 N.E. 469, syllabus, an action to quiet title will not lie against the state. *W. Park Shopping Ctr. v. Masheter* (1966), 6 Ohio St.2d 142, 35 O.O.2d 216, 216 N.E.2d 761. Therefore, to the extent that *Kelly Nail* conflicts with today's statutes establishing statutory procedures for abandonment or vacation of state highways, we find that it has been implicitly overruled by statute.

{¶ 14} Rather, we find this court's decision in *Bigler v. York Twp.* (1993), 66 Ohio St.3d 98, 609 N.E.2d 529, to be dispositive. In *Bigler*, we examined the means by which a township could abandon township roads. The relevant statute in that case was R.C. 5553.042, which empowers a board of county commissioners to vacate a township road upon petition by an abutting land owner. We held, "If this court were to hold that an action could also be brought in a court of common pleas to quiet title to a township road on the grounds of abandonment, we would directly undermine the discretion which the General Assembly expressly granted to the board of county commissioners in R.C. 5553.042. With this separate means to the same end, the statutory powers conveyed to the county commissioners in R.C. 5553.042 would be rendered meaningless." Id. at 101.

{¶ 15} In addition, R.C. 5529.01 prevents the automatic vacation or abandonment of a public highway outside of a municipal corporation. R.C. 5529.01 provides: "When the director of transportation, in the construction, maintenance, or repair of a road on the state highway system outside the limits of municipal corporations, relocates the road or relocates or constructs a bridge, culvert, underpass, overpass, or other structure or improvement, the highway or portion thereof from which it is proposed to divert the travel shall not thereby be deemed to be vacated or abandoned, nor shall the title or easement of the state therein be vacated or abandoned, but shall remain in effect until the road or portion thereof is vacated or otherwise disposed of."

{¶ 16} Therefore, R.C. 5553.042 applies to abandonment of a township road, R.C. 5529.01 applies to abandonment of a public highway outside of a municipal corporation, and we find that R.C. 5511.01 and 5511.07 express the General Assembly's intent to prohibit common-law claims for abandonment of an easement within a municipal corporation on which a public highway was built.

{¶ 17} Rather than being a mere dispute between ODOT and a fee owner, we noted in *Bigler* that the vacation of a road "involves the careful weighing of widely diverse interests and public-policy considerations." 66 Ohio St.3d at 100, 609 N.E.2d 529. To that end, we note that R.C. 5511.01 and 5511.07 provide other protections that would not exist in a common-law action for abandonment of an easement. For example, both statutes provide for notice to the public or to the owners of abutting property about the prospective abandonment or vacation of the highway, and they allow public involvement, which a private lawsuit does not allow. Further, R.C. 5511.01 provides for notice to other authorities, such as local governments and planning commissions, and any affected utilities and railroads. R.C. 5511.07 provides for notice to the director of natural resources, who is empowered by R.C. 1519.03 to maintain an inventory of trails and to prepare plans for development of a statewide trails system for recreation.

6

**{¶ 18}** Finally, if the director decides to vacate a state highway, R.C. 5511.07 allows claims for resulting damages. R.C. 5511.07 provides that a final determination for vacating the highway cannot occur until all damage awards have been accepted or deposited in court, thereby giving the director the discretion to refuse to vacate the highway, portion of highway, or highway easement, if damage claims would be too large.

**{¶ 19}** In addition to the state implications, there are federal implications, as well. Federal Highway Administration regulations require state transportation departments, if they wish to dispose of any interest in real property that was acquired with federal funds, to offer the property to other government agencies for use as parks, in conservation, or for other recreational purposes if the property has potential for such use. 23 C.F.R. 710.409(b). If the property is not transferred for continued state use, the state transportation department may sell the land to a private party for fair market value. 23 C.F.R. 710.409(a) and 710.403(d).

**{¶ 20}** Permitting a common-law action to declare the easement abandoned would defeat much of the intent of the statutory scheme set up in R.C. Chapter 5511. We find that the detailed procedures for abandoning or vacating a public highway signal the General Assembly's intent to make the statutory process an exclusive one.

**{¶ 21}** Finally, the court of appeals concluded that *Bigler* did not control because R.C. 5553.042 expressly provided for property owners to petition a board of county commissioners to vacate a township road, while R.C. 5511.01 does not expressly provide such a petition process. We find this distinction to be of little consequence since fee holders can always petition the director of transportation to exercise its discretion to vacate and abandon a highway easement, even though no specific petition process is set forth in the statutes.

**Conclusion**

{¶ 22} In 1959, Parsons granted a perpetual easement to the highway department. The state fully compensated Parsons for the burden that the perpetual highway easement imposed on her property. The current fee holder, New 52, wishes to vacate that perpetual easement. R.C. Chapter 5511 gives the director of transportation the exclusive authority to abandon or vacate portions of the state highway system. Therefore, a court of common pleas has no jurisdiction to decide whether an easement for a state highway has been abandoned. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court dismissing the complaint.

Judgment reversed.

MOYER, C.J., and O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

PFEIFER and LANZINGER, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 23} I agree with Justice Lanzinger's analysis that R.C. 5303.01 recognizes that common-law actions to quiet title may be brought against the state. When a landowner grants an easement to the state for highway use and the state no longer uses the easement for a highway, the landowner should not be held to the whim of the director of the Ohio Department of Transportation to regain fee simple in his or her property. Landowners have retained the right to bring a common-law action to force abandonment to reclaim their full fee rights in instances where the state has abandoned the sticks it acquired from the landowner's bundle of rights.

{¶ 24} I further dissent in order to challenge the majority's citation of Federal Highway Administration regulations that "require state transportation departments, if they wish to dispose of any interest in real property that was acquired with federal funds, to offer the property to other government agencies for use as parks, in conservation, or for other recreational purposes if the property

has the potential for such use. 23 C.F.R. 710.409(b)." Those rules, if applied here, would constitute an unconstitutional taking. The state's property interest here is an easement for highway use; to transfer the interest for use as a park would be transferring an interest greater than the state held.

_____

**LANZINGER, J., dissenting.**

{¶ 25} I dissent from the holding of the majority that a court of common pleas has no jurisdiction to decide whether an easement for a state highway has been abandoned.

{¶ 26} My analysis begins with the fact that New 52 Project, Inc. ("New 52") has sued the state in common pleas court, seeking a declaration that the public-highway easement has been abandoned or extinguished. This court has held that the state of Ohio cannot be sued without its consent and further held that an action to quiet title cannot lie against the state. *W. Park Shopping Ctr. v. Masheter* (1966), 6 Ohio St.2d 142, 35 O.O.2d 216, 216 N.E.2d 761, paragraphs one and two of the syllabus. *W. Park* was effectively overruled, however, when the General Assembly subsequently waived the state's immunity with regard to actions to quiet title under R.C. 5303.01. Am.S.B. No. 208, 134 Ohio Laws, Part I, 402, 405.

{¶ 27} R.C. 5303.01 provides:

{¶ 28} "An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest. Such action may be brought also by a person out of possession, having, or claiming to have, an interest in remainder or reversion in real property, against any person who claims to have an interest therein, adverse to him, for the purpose of determining the interests of the parties therein.

{¶ 29} "Whenever *the state* or any agency or political subdivision thereof *has*, or appears to have, *an interest in real property adverse to the person in possession claiming the right thereto, the state* or such agency or such political subdivision *may be made a party in any action brought under this section.*" (Emphasis added.)

{¶ 30} Therefore, property owners have a statutory right to pursue an action to quiet title against the state.

{¶ 31} The ability of New 52 to pursue an action to quiet title is not affected by this court's decision in *Bigler v. York Twp.* (1993), 66 Ohio St.3d 98, 609 N.E.2d 529. *Bigler* involved an entirely different statute, R.C. 5553.042(B), which provides a specific procedure for an abutting landowner of a township road to petition for vacation of "a public road, highway, street, or alley." This court held that R.C. 5553.042 established an exclusive mechanism for vacating township roads and therefore the court of common pleas had no jurisdiction over a common law action to quiet title to a township road. Id. at syllabus. However, neither R.C. 5511.01 nor 5511.07, which are at issue here, offers a similar petition process to fee owners who have public highway easements on their property.

{¶ 32} To reach its conclusion that the court of common pleas lacks jurisdiction over New 52's action, the majority adds language to the statutes being interpreted. But if the General Assembly truly intended to give *exclusive* authority to the director of transportation to abandon or vacate state highway easements, it would have eliminated the second paragraph of R.C. 5303.01, which specifically allows property owners to challenge the state's interest in their realty.

{¶ 33} New 52 has a remedy under R.C. 5303.01, and although it did not specifically refer to the statute in its complaint, it has set forth a claim to quiet title. The complaint sought a declaration that the public highway easement had been abandoned by the state or had been extinguished through nonuse and a declaration that it is the owner of the unencumbered real property in which the

state has consented to be a party. Ohio is a notice-pleading state, and as the court of appeals recognized, the declaratory judgment action sought to quiet title in New 52. For this reason, I would affirm the judgment of the court of appeals that remanded this case to the trial court for further proceedings.

_____

David Reid Dillon, for appellee.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Stephen P. Carney, Deputy Solicitor, Michael Stokes, Assistant Solicitor, and Frederick C. Schoch, Assistant Attorney General, for appellant.

_____